UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| L.B.O.M.,[1] <br><br> Petitioner, <br><br> v. <br><br> LAURA HERMOSILLO, *et al.*, <br><br> Respondents. | CASE NO. 2:25-cv-02695-GJL <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner L.B.O.M, proceeding with counsel, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. She has been detained since April 18, 2025. *Id.* at 1. On December 24, 2025, Petitioner filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody. *Id.*

The Government has filed a Response arguing Petitioner's detention is lawful under 28 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 11. Petitioner has filed a Traverse. Dkt. 14.

---

[1] Under LCR 5.2(a)(2), Petitioner's name is abbreviated because she is a minor.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **ORDERS** that the habeas Petition (Dkt. 1) is **GRANTED**, Respondents' request that the Petition be dismissed (Dkt. 11) is **DENIED**, and the Government **SHALL PROVIDE** Petitioner with a bond hearing before an Immigration Judge ("IJ") within **fourteen (14) days** of this Order.

## I.  BACKGROUND

Petitioner is a native and citizen of Columbia. Dkt. 1-2, O.M Decl. ¶ 1. In 2024, Petitioner entered the United States as an unaccompanied minor. *Id.* at ¶ 3. She fled Columbia because after she left her abusive family and her caretaker was threatened by a guerilla group for political reasons. *Id.* On May 23, 2024, Petitioner arrived in the United States at San Ysidro, California. Dkt. 12, Reed Decl. ¶ 4. After being found inadmissible to the United States, the ICE Juvenile and Family Management Transportation and Compliance Unit transported Petitioner to a shelter in Texas. *Id.* at ¶ 5–6. Several months later, Petitioner was released on parole and released to her caretaker. *Id.* at ¶ 7.

On April 11, 2025, Petitioner, along with her caretaker, arrived at the United States-Canada border near Blaine, Washington. *Id.* at ¶ 4. At first, Petitioner was allowed to enter Canada with her caretaker, but a week later she was returned to the United States, where ICE detained her and sent her to NWIPC on April 18, 2025. *Id.* While at NWIPC, U.S. Citizenship and Immigration Services ("USCIS") granted Petitioner Special Immigrant Juvenile ("SIJ") status. Dkt. 1-1 at 2. SIJ status means that Petitioner "is statutorily eligible to adjust status to that of a permanent resident once a visa becomes available and her I-360 priority date is current." Dkt. 1 at 2. According to the Government, "With approved classification, USCIS will consider

Petitioner for SIJ Deferred Action, which, if approved, would provide Petitioner with a temporary stay of removal." Dkt. 11 at 4.

On November 24, 2025, an IJ denied Petitioner's motion to terminate removal proceedings against her. Dkt. 1-4. The IJ explained that "DHS will agree to continuances for the adjudication of the I589 and I360 by USCIS as required by JOP." *Id.* (referring to the settlement agreement in *J.O.P v. DHS*, No. 8:19-cv-01944-SAG (D. Md. July 30, 2024)).

On December 24, 2025, Petitioner filed the instant habeas Petition. Dkt. 1. The Court directed service on December 28, 2025, Dkt. 4, and Respondents filed a Response on January 12, 2026, Dkt. 11. Petitioner filed a Traverse on January 20, 2026. Dkt. 14. The submission of the Traverse completed the briefing in this matter, making it ripe for review.

## II.    STATUTORY FRAMEWORK

Petitioner is detained under 8 U.S.C. § 1225(b)(1) and (2)(a). Dkt. 12, Reed Decl. Title 8 of the United States Code §§ 1225, 1226, and 1231 governs immigration detention. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225 applies to "applicants for admission"—noncitizens[2] who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). "Applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to

---

[2] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

1  fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). The
2  *Jennings* Court found that Section 1225(b)(2) is broader and "serves as the catchall provision
3  that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

4  Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal
5  process that does not include a hearing before an Immigration Judge or review of the removal
6  order. 8 U.S.C. § 1225(b)(1)(A)(i). But, if a noncitizen "indicates either an intention to apply for
7  asylum ... or a fear of persecution," the inspecting immigration officer must refer the noncitizen
8  for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If
9  the asylum officer determines that the noncitizen has a credible fear of persecution, the
10 noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. §
11 1225(b)(1)(B)(ii). Under the statute, the only opportunity for a noncitizen to be released pending
12 a decision on the asylum application is temporary parole "for urgent humanitarian reasons or
13 significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

14 The statute does not impose "any limit on the length of detention" pending a decision on
15 the asylum application and does not authorize bond hearings or release on bond. *Jennings*, 583
16 U.S. at 296–301.

17 Section 1231 governs the detention and release of noncitizens who have been ordered
18 removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8
19 U.S.C. § 1231(a)(2). The removal period is triggered by the latest of the following: (1) the date
20 the order of removal becomes administratively final; (2) if the removal order is judicially
21 reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if
22 the noncitizen is detained or confined (except under an immigration process), the date the
23 noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). If ICE is unable
24

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

to remove the noncitizen during the removal period, DHS may continue to detain certain noncitizens specified in the statute or release them under an order of supervision. 8 U.S.C. § 1231(a)(6). Section 1231(a)(6), however, does not authorize indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In addition, the Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011).

### III.    LEGAL STANDARD

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "[d]istrict courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* And "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (cleaned up).

In assessing the constitutionality of prolonged mandatory detention, the Court in *Banda* declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceeding caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 853–59 (D. Minn. 2019)). Courts in this District have now adopted the "*Banda* test" to assess when detention violates due process.

*See, e.g.*, *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, at *4–7 (W.D. Wash. Dec. 5, 2025); *Belqasim v. Hermosillo*, No. 2:25-cv-1282-LK, 2025 WL 3466971, at *7–10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Maliwa v. Scott*, No. 2:25-cv-0788-TMC, 2025 WL 2256711, at *3–4 (W.D. Wash. Aug. 7, 2025); *Hong v. Mayorkas*, No. 2:20-cv-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). The Respondents acknowledge that courts in this District analyze this issue using the *Banda* multi-factor test (Dkt. 11 at 6–7), and the Court will likewise apply the *Banda* test in determining if Respondents have met their burden of proving that Petitioner's continued detention without a bond hearing is justified.

## IV.   DISCUSSION

**A.   The *Banda* Factors**

   **1.   Total Length of Detention**

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

*Banda* relied on several cases from the Southern District of New York. First, in *Perez v. Decker*, the court found that a period of nine months favored the petitioners, reasoning that "the length of detention has surpassed the rough six-month threshold at which detentions become less

and less reasonable." No. 18-CV-5279-VEC, 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018). In *Lett v. Decker*, the court found that 10 months was sufficient to favor the petitioner. 346 F. Supp. 3d 379, 387–88 (S.D.N.Y. 2018).

In the wake of *Banda*, courts in the Western District of Washington have considered a range of periods that favor the detainee. *Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (eleven months); *Rahman v. Garland*, No. 2:24-cv-02132-JHC, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom*; *Anisur R. v. Garland*, 2025 WL 1919252 (W.D. Wash. July 11, 2025) (twelve months); *Murillo-Chavez v. Garland*, No. 2:22-cv-303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (nineteen months); *Doe v. Bostock*, No. 2:24-cv-0326-JLR, 2024 WL 3291033, at *10 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (fifteen months); *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 929–30 (W.D. Wash. 2020) (eighteen months).

Courts examining shorter periods of time have found the factor neutral. *See, e.g.*, *Odimara v. Bostock*, No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) ("Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months. Because Petitioner's current detention has reached—but not yet exceeded—the brief period of detention upheld in *Demore*, this first factor is neutral or, at most, weighs slightly in favor of granting a bond hearing.").

Here, Petitioner was detained for more than eight months at the time she filed her Petition, and her detention is now approaching ten months. Dkt. 1; Dkt. 12 ¶¶ 8–9. Because

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Petitioner's current detention is approaching ten months, a timeframe the *Lett* court found sufficient to favor the petitioner in that case, the Court finds the first *Banda* factor weighs in favor of Petitioner. 346 F. Supp. 3d at 387–88.

### 2. Likely Duration of Future Detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859). In *Banda*, for example, the Court noted that the petitioner had recently filed an appeal of a removal order with the BIA. *Id.* As the court explained, if the BIA were to affirm the removal order, the petitioner could seek review in the Ninth Circuit. *Id.* That process, the court found, might "take up to two years or longer." *Id.* (citation omitted). Thus, the *Banda* court found that the factor favored granting the petitioner a bond hearing. *Id.*; *see also Hong*, 2022 WL 1078627, at *7 (noting that appeals in the Ninth Circuit typically pend for twelve to twenty months before argument and then an additional three months to a year before decision, and finding the factor favors petitioner).

In cases like *Banda*, *Djelassi*, and *Hong*, where the courts found that the length of appeal favored the petitioner, an appeal had already been filed. *See Banda*, 385 F. Supp. 3d at 1119; *Hong*, 2022 WL 1078627, at *7; *Djelassi*, 434 F. Supp. 3d at 931; *see also Murillo-Chavez*, 2022 WL 16555994, at *5; *Leaupepetele v. ICE Field Off. Dir.*, No. 2:21-CV-961-RJB, 2021 WL 5450790, at *5 (W.D. Wash. Nov. 4, 2021), *report and recommendation adopted*, 2021 WL 5447918 (W.D. Wash. Nov. 22, 2021). Where proceedings are in much earlier stages, courts have found the factor neutral. *See Rahman*, 2025 WL 1920341, at *4; *Doe*, 2024 WL 3291033, at *10.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

In this case, Petitioner's release from detention does not appear reasonably foreseeable. First, her removal proceedings are stayed so that USCIS can adjudicate her eligibility for asylum and Special Immigrant Juvenile Status deferred action. Second, even if these adjudications occur, Petitioner's removal proceedings will resume, which means she can exhaust the appeals process if she is ordered to be removed. This process can take up to two years. *Banda*, 385 F. Supp. 3d at 1119. Given the length of time the appeals process can take, the Court finds that the second *Banda* factor weighs in favor of Petitioner. *See Toktosunov*, 2025 WL 3492858, at 5 (finding BIA appeals take over six months).

### 3. Conditions of Detention

Next, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6; *see also Amhirra v. Warden*, No. 2:25-cv-1376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025); *Toktosunov*, 2025 WL 3492858, at *5; *Rahman*, 2025 WL 1920341, at *4 (citing cases). Thus, the Court finds the third *Banda* factor favors Petitioner.

### 4. Delays in Removal Proceedings (by Petitioner and Respondent)

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

1  WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019
2  WL 5962685 (W.D. Wash. Nov. 13, 2019).

3        Courts, however, should be "sensitive to the possibility that dilatory tactics by the
4  removable [noncitizen] may serve not only to put off the final day of deportation, but also to
5  compel a determination that the [noncitizen] must be released because of the length of his
6  incarceration." *Id.*

7        With respect to the Government, "If immigration officials have caused delay, it weighs in
8  favor of finding continued detention unreasonable . . . . Continued detention will also appear
9  more unreasonable when the delay in the proceedings was caused by the immigration court or
10 other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11
11 (S.D.N.Y. May 23, 2018).

12       Here, there is no indication in any of the filings before the Court that either Petitioner or
13 Respondents caused delays in the proceedings. *See* Dkts. 1, 11, 14. Thus, the Court finds the
14 fourth factor favors Petitioner, while the fifth factor favors Respondent.

15       5.      <u>Likelihood of Final Order of Removal</u>

16       Under the final *Banda* factor, the Court considers the likelihood that the removal
17 proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (citation
18 omitted). Here, Respondents argue that "[i]t is unknown whether Petitioner's applications for
19 relief from removal pending with USCIS will be granted or denied." Dkt. 11 at 7. Therefore,
20 Respondents state that the outcome of Petitioner's applications is speculative. *Id.* The Court
21 agrees, and thus finds the sixth *Banda* factor neutral.

22 //
23 //
24

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

6.   Weighing the Factors

In sum, four of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, and one of the factors is neutral. Only one factor weighs in favor of Respondents. Notably, the most important factor—the length of detention—weighs in Petitioner's favor. *See Banda*, 385 F. Supp. 3d at 1118. Since four of the *Banda* factors favor Petitioner, the Court concludes that the *Banda* test as a whole favors Petitioner, and that her "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide [her] with a bond hearing." *Id.* at 1120.

**B.   Appropriate Relief**

Having found Petitioner's detention has become unreasonable, the Court turns to the scope of habeas relief. In her Petition, Petitioner asks the Court to "order [her] release unless Respondents hold a custody hearing for [her] before an immigration judge within 14 days." Dkt. 1 at 16. In their Response, Respondents contend that Petitioner is not entitled to release, but if the Court were to grant habeas relief, the only appropriate relief would be for Petitioner to have a bond redetermination hearing in immigration court. Dkt. 11 at 7–8.

Courts in this District have ordinarily refused to order immediate release, finding that "[t]here is no authority" to support a claim that a petitioner "is entitled to an order of release." *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *9 (quoting *Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *8 (W.D. Wash. May 5, 2021)), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021); *see also Hong*, 2022 WL 1078627, at *7 (explaining that the remedy for prolonged detention is a bond hearing); *Pasillas v. ICE Field Off. Dir.*, No. 2:21- cv-681-RAJ, 2021 WL 8084206, at *7 (W.D. Wash. Oct. 18, 2021), *report and*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

*recommendation adopted*, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (granting bond hearing but not release).

Here, the Court concludes that the proper remedy is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing).

## V.   CONCLUSION

For the foregoing reason, the Court **ORDERS** that the Petition (Dkt. 1) is **GRANTED**, and that Respondents' request that the Petition be dismissed (Dkt. 11) is **DENIED**. Further, the Court **ORDERS** the Government to provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), within **fourteen (14) days** of this Order.

Dated this 2nd day of February, 2026.

Grady J. Leupold
United States Magistrate Judge